**O**

# United States District Court
# Central District of California

| | |
|---|---|
| ROGER ANDREWS, | Case No. 2:14-cv-03207-ODW(VBK) |
| Plaintiff, | |
| v. | **ORDER DENYING PLAINTIFF'S MOTION TO REMAND [26], GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [25], AND GRANTING PLAINTIFF PARTIAL SUMMARY JUDGMENT** |
| U.S. SECURITY HOLDINGS INC.; ANDREWS INTERNATIONAL INC.; and DOES 1 through 75 inclusive, | |
| Defendants. | |

## I.    INTRODUCTION

Two motions are currently pending before the Court.  First is Plaintiff Roger Andrews' Motion to Remand.  (ECF No. 26.)  Second is Defendants U.S. Security Holdings Inc. and Andrews International Inc.'s Motion for Summary Judgment.  (ECF No. 25.)   This matter is an employment contract dispute between a corporate executive and his former employers over bonus and severance pay.  After considering the parties' briefs, the record, and arguments, the Court **DENIES** Plaintiff's Motion to Remand, **GRANTS IN PART** Defendants' Motion for Summary Judgment, and **GRANTS** Plaintiff partial summary judgment pursuant to Federal Rule of Civil Procedure 56(f).

/ / /

## II.   FACTUAL BACKGROUND

Plaintiff is a former executive and co-founder, along with his brother Randy Andrews, of Andrews International.  (ECF No. 31-1 ["UF"] No. 1.)[1]  In fall 2008, Audex Management Company, LLC ("Audex") acquired a controlling interest in Andrews International.  (UF No. 2.)  At the time of the Audex's purchase, Plaintiff and Audex signed a written employment contract (the "Employment Agreement") which stated that Plaintiff would maintain an executive-level position with certain benefits and compensation.  (UF No. 4.)  The Employment Agreement, by its own terms, was set to expire October 3, 2013—five years from the date of signing.  (*Id.*)

The Employment Agreement contains several clauses relevant to this dispute. First, it contains an integration clause which states that "[t]his Agreement constitutes the entire agreement between the Employer and all of its subsidiaries, on the one hand, and the Executive, on the other hand, with respect to the subject matter hereof and supersedes all prior agreements[.]"   (ECF No. 25-3, Ex. 8 ["Emp. Ag."] ¶ 11.)  The Employment Agreement also contains a written amendment clause which states that "[t]his Agreement may be amended or modified only by a written instrument signed by the Executive and by a duly authorized representative of the Employer."  (*Id.* ¶ 15.) It also contains the following clause regarding Plaintiff's bonuses:

> Beginning with the fiscal year ending December 31, 2008, the Executive shall be entitled to participate in an annual incentive bonus program as established by the Board of Directors of the Employer . . . . Prior to the end of each fiscal year . . . the Board of Directors of the Employer shall establish the Incentive Bonus Plan for the following fiscal year consistent with Exhibit B and shall provide the Executive with the bonus target for the next fiscal year.

---

[1] All citations to "UF" denote facts undisputed by both parties.  (*Compare* ECF No. 25-2, Defendants' Statement of Uncontroverted Facts ["DUF"], *with* ECF No. 31-1, Plaintiff's Statement of Uncontroverted Facts ["PUF"].)  Factual disputes are cited as "DUF" or "PUF."

Upon achievement of the bonus target for any such succeeding fiscal year, the Executive shall be entitled to receive a bonus of up to 38.8% of his Salary.

(*Id.* ¶ 4(b).)

The Employment Agreement further provides that Andrews is entitled to severance pay if he is terminated without cause. (*Id.* ¶ 6(d).) The Employment Agreement also states: "Unless otherwise specifically provided in this Agreement or otherwise required by law, all compensation and benefits payable to the Executive under this Agreement shall terminate on the date of termination of the Executive's employment under this agreement." (*Id.*)

In February 2012, U.S. Security purchased all outstanding shares of stock in Andrews International. (UF No. 3.) The negotiations for this stock purchase agreement were conducted by Randy Andrews and Audax representatives on one side, and U.S Security's Chief Executive Officer Charles Schneider and other U.S. Security executives on the other side. (UF No. 5.) The parties agreed that Plaintiff and Randy Andrews' Employment Agreements were part of the final transaction. (UF No. 9.) After the stock purchase was completed, Plaintiff signed a written, two-page "Offer of Employment" from U.S. Security which states that U.S. Security "will honor [Plaintiff's] existing Andrews International Employment [A]greement ending October 3, 2013." (ECF No. 25-3, Ex. 9 ["Off. Emp."].) Plaintiff's 2008 Employment Agreement and the 2012 Offer of Employment "constitute the contract upon which [Plaintiff] is basing [his] claims." (UF No. 14 [quoting Pl.'s Dep. 119:11–19, Jan. 6, 2015].)

Plaintiff had no direct communication with anyone at U.S. Security regarding his Employment Agreement prior to U.S. Security's purchase of Andrews International. (UF No. 10.) Randy Andrews and Charles Schneider, however, had previously discussed the Employment Agreements on several occasions prior to the stock purchase agreement. (UF No. 6.) There is a factual dispute regarding the scope

and depth of those discussions.  At his deposition, Randy Andrews testified that Charles Schneider understood that "at the end of [Plaintiff's] contract, that if they did not offer additional employment to him or a new contract, that he would be entitled to two years severance."  (PUF No. 9; Randy Andrews Dep. 20:14–19, Jan. 7, 2015.) According to U.S. Security, the discussions were limited to Randy Andrews stating that he would not agree to the sale of Andrews International unless U.S. Security honored his Employment Agreement and Plaintiff's Employment Agreement as is. (DUF No. 9.)  On October 3, 2013, Plaintiff's Employment Agreement expired and he left the company.  (UF No. 16.)

### III.    PROCEDURAL BACKGROUND

On March 17, 2014, Plaintiff filed this lawsuit in Los Angeles Superior Court. (ECF No. 1, Ex. 1 ["Compl."].)  Plaintiff's Complaint raises seven causes of action: (1) breach of express employment agreement; (2) failure to pay wages; (3) failure to pay wages upon termination; (4) negligent misrepresentation; (5) failure to keep accurate records; (6) unfair business practices; and (7) request for an accounting and imposition of a constructive trust.  (*Id.*)  Defendants filed their Answer and removed the case to this Court on April 25, 2014.  (ECF No. 1.)  Defendants' basis of removal was federal question jurisdiction under 28 U.S.C. § 1331.  (*Id.*)

In their Notice of Removal, Defendants explain that while no cause of action explicitly names a federal statute, Plaintiff's claims seeking to recover employee welfare benefits and medical insurance premiums are preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a).   (*Id.* at 3.) Defendants cite numerous passages from Plaintiff's Complaint regarding subject matter preempted under ERISA, to include Plaintiff's allegation that U.S. Security "breached the Employment Agreement by failing to pay Plaintiff's medical insurance while he was still employed by Defendants."  (*Id.*)  Defendants explain that Plaintiff's claims regarding his health insurance are "employee welfare benefit plans" within the meaning of ERISA and thus those claims arise exclusively under ERISA's civil

enforcement scheme.  (*Id.* at 5 [citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 67 (1987)].)

On February 6, 2015, Defendants filed a Motion for Summary Judgment as to all of Plaintiff's claims.  (ECF No. 25 ["MSJ"].)  Later that same day, Plaintiff filed a Motion to Remand.  (ECF No. 26 ["Mot. to Remand"].)  Defendants filed a timely Opposition to Plaintiff's Motion to Remand (ECF No. 30), and Plaintiff a timely Reply (ECF No. 33).  Plaintiff's Opposition to Defendant's Motion for Summary Judgment, however, was not timely filed—it was two days late.  (ECF No. 31 ["MSJ Opp. Br."].)  Defendants filed a timely Reply.  (ECF No. 34.)

## IV.   LEGAL STANDARDS

### A.   Federal Question Jurisdiction and Removal

Under 28 U.S.C. § 1331, the district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Federal question jurisdiction is presumed absent unless defendants, as the party seeking to invoke the court's jurisdiction, show that plaintiff has either alleged a federal cause of action, a state cause of action that turns on a substantial dispositive issue of federal law, or a state cause of action that Congress has transformed into an inherently federal cause of action by completely preempting the field of its subject matter.  *See Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 9 (1983); *Avco Corp. v. Machinists*, 390 U.S. 557, 560 (1968); *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916).  The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 655 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1998)).  The defendant carries the burden of proving the basis for the federal court's jurisdiction.  *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 (9th Cir. 1990).

/ / /

1        Whether a claim "arises under" federal law must be determined by reference to
2    the "well-pleaded complaint." *Franchise Tax Bd.*, 463 U.S. at 9–10.   Since a
3    defendant may remove a case under 28 U.S.C. § 1441(b) only if the claim could have
4    been brought in federal court, the question for removal jurisdiction must also be
5    determined by reference to the "well-pleaded complaint." *Merrell Dow Pharms., Inc.*
6    *v. Thompson*, 478 U.S. 804, 808 (1986).   The well-pleaded complaint rule makes the
7    plaintiff the "master of the claim" for purposes of removal jurisdiction. *Caterpillar,*
8    *Inc. v. Williams*, 482 U.S. 386, 392 (1987).   A plaintiff may, "by eschewing claims
9    based on federal law, choose to have the cause heard in state court." *Id.* at 399.   "It is
10   an independent corollary of the well-pleaded complaint rule that a plaintiff may not
11   defeat removal by omitting to plead necessary federal questions in a complaint."
12   *Franchise Tax Bd.*, 463 U.S. at 22.

13   **B.   Summary Judgment**

14       Summary judgment is appropriate if, viewing the evidence and drawing all
15   reasonable inferences in the light most favorable to the nonmoving party, there are no
16   genuine disputed issues of material fact, and the movant is entitled to judgment as a
17   matter of law.   Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322
18   (1986).   A fact is "material" if it "might affect the outcome of the suit under the
19   governing law," and a dispute as to a material fact is "genuine" if there is sufficient
20   evidence for a reasonable trier of fact to decide in favor of the nonmoving party.
21   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   "If the evidence is merely
22   colorable, or is not significantly probative," the Court may grant summary judgment.
23   *Id.* at 249–50 (citation omitted).   At the summary judgment stage, the Court "does not
24   assess credibility or weigh the evidence, but simply determines whether there is a
25   genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006).

26       The moving party has the burden of demonstrating the absence of genuine issue
27   of fact for trial. *Celotex*, 477 U.S. at 323.   To meet its burden, "the moving party must
28   either produce evidence negating an essential element of the nonmoving party's claim

1    or defense or show that the nonmoving party does not have enough evidence of an

2    essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire &*

3    *Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (citation omitted).

4    Once the moving party satisfies its initial burden of production, the burden shifts to

5    the nonmoving party to show that there is a genuine issue of material fact. *Id.* at 1103.

6

## V.   DISCUSSION

7    The Court will first address Plaintiff's Motion to Remand.  As explained *infra*,

8    Plaintiff cannot concede or dismiss a theory of liability at the eleventh hour in hopes

9    that such procedural move will warrant a remand.  Ninth Circuit authority firmly

10    authorizes the Court to maintain jurisdiction over this case despite the newly-

11    discovered absence of a federal question.  With respect to Defendants' Motion for

12    Summary Judgment, the Court finds that there are no genuine disputes as to material

13    fact, and both parties are entitled to summary judgment.  All liability issues are

14    resolved leaving only damages for the fact-finder.

15    **A.   Plaintiff's Motion to Remand**

16    Plaintiff's Motion to Remand is based on his concession that the claims raising

17    a federal question are meritless.  In the alternative, Plaintiff seeks leave to amend his

18    Complaint to dismiss his federal claims thus affirmatively removing any grounds for

19    federal question jurisdiction.  Plaintiff further requests, in the alternative, leave to

20    dismiss the entire action without prejudice.  Despite being in federal court for the last

21    eleven months, it is clear that Plaintiff wants out.  However, the bases for his requests

22    are unsupported by the law and the Court therefore denies all three requests.

23
24    **1.   Concession of Claims and Deleting Claims Through Amendment Does Not Strip the Court of Jurisdiction.**

25    The parties do not dispute that Plaintiff's Complaint seeks medical benefits

26    under Defendants' employee welfare benefits plan.  The Complaint alleges that

27    Defendants' "breached the Employment Agreement by failing to pay Plaintiff's

28    medical insurance while he still was employed," and by failing to "continu[e] . . . his

group health plan for 24 months." (Compl. ¶¶ 14, 16.)  The parties also do not dispute that such a claim is preempted by ERISA even though the Complaint never actually references ERISA.  *See Metro. Life*, 481 U.S. at 67 (holding that because employee brought suit to enforce the terms of an ERISA-regulated benefits plan, the state law claims were recharacterized as federal claims within the ambit of ERISA); *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 944 (9th Cir. 2009) ("[T]here is an exception to the well-pleaded complaint rule for state-law causes of action that are completely preempted § 502(a).");  *Clorox Co. v. U.S. Dist. Court for N. Dist. of Cal.*, 779 F.2d 517, 521 (9th Cir. 1986) (concluding that the substance of the claims, and not the explicit references to ERISA, determine whether the claims are preempted under ERISA).

Instead, Plaintiff contends that "[d]uring the prosecution of his case, Plaintiff determined that he was not entitled to reimbursement of his medical premiums under U.S. Security's [benefits] Plan when he filed his Complaint nor in the future."  (Mot. to Remand at 5.)  Plaintiff also concedes that he declined to participate in the medical plan Defendants offered him.  (*Id.* at 5, 8.)  As a result, Plaintiff claims he "ha[d] no standing to bring an ERISA claim and [D]efendant[s] improperly removed the case."  (*Id.* at 5.)  Plaintiff concedes that his ERISA claims are meritless and therefore argues that Defendants' removal is improper.  In the alternative, Plaintiff argues he should be granted leave to amend so he can remove the ERISA claims thus conclusively eliminating the federal question jurisdiction.  (*Id.*)

The federal question giving rise to the Court's jurisdiction is framed by the Complaint without any inquiry into the factual merits of the federal question.  *See Sparta Surgical Corp. v. Nat. Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1211 (9th Cir. 1998) ("The existence of federal question jurisdiction is ordinarily determined from the face of the complaint."); *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996).  Defendants' removal in this case was proper.  At the time the Complaint was filed, Plaintiff asserted claims that were preempted by federal law. Defendant

removed the case under federal question jurisdiction and Plaintiff did not seek remand for eleven months.  A subsequent realization that those claims are meritless does not render the removal improper.  The purpose of litigating the case is to determine which claims have merit, and the Court does not lose jurisdiction because the process worked as it should.

Furthermore, a "plaintiff may not compel remand by amending a complaint to eliminate the federal question upon which removal was based." *Sparta Surgical*, 159 F.3d at 1213.  In *Nishimoto*, the Ninth Circuit squarely addressed a plaintiff's request to "delete" ERISA-preempted claims from a complaint to avoid federal jurisdiction. 903 F.2d at 712.  The court explained that "[o]nce a federal court acquires removal jurisdiction over a case, it also acquires jurisdiction over pendent state claims. Dismissal of the federal claims does not deprive a federal court of the power to adjudicate the remaining pendent state claims." *Id.* (internal citations omitted).  In deciding whether to exercise jurisdiction over the remaining pendent state claims, the *Nishimoto* court instructs that district courts "should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness and comity." *Id.* (internal citations and quotation marks omitted).  The court ultimately declared the plaintiff's request "meritless" and affirmed the district court's continued exercise of jurisdiction over the plaintiff's state law claims. *Id.* at 715.

Here, the Court must maintain its pendant jurisdiction over Plaintiff's remaining state law claims.  Whether phrased as a concession of meritless claims or a request to amend/delete federal claims, the Court is not stripped of its jurisdiction and is not required to remand the action. *See Sparta Surgical*, 159 F.3d at 1209.  In light of the maturity of the litigation, remanding the case would be a tremendous reproach to judicial economy.  This case has been on the Court's docket for almost a year, has reached summary judgment, and is scheduled for trial next month.  The Court also notes that the deadline to amend the Complaint passed over five months ago.  (ECF No. 16.)   Stopping the entire litigation process at the eleventh-hour is a grave

inconvenience to Defendants and a waste of eleven months of this Court's supervision.  Having considered and weighed the values of judicial economy, convenience, fairness, and comity, the Court concludes that it will maintain pendent jurisdiction over Plaintiff's remaining claims.

In a last ditch argument, Plaintiff tries to blame the Defendants for not doing his own due diligence.  Plaintiff claims that "Defendants knew or should have known that [P]laintiff was not [a] participant of [D]efendants' plan when they made their motion for removal."  (Mot. to Remand at 5.)  Plaintiff wants the Court to overlook his own decision to bring ERISA-related claims, and instead cast blame on the Defendants who "should have known" Plaintiff was bringing meritless claims.  However, there is no legal principle anywhere that prohibits a defendant from removing an action if it should have known that the federal claims were meritless.  If Plaintiff wanted to stay in state court, he should have "eschew[ed]" his federal claims earlier.  *Caterpillar*, 482 U.S. at 399.

## 2.     Voluntary Dismissal is Not Appropriate.

In addition to his concession and request to amend the Complaint, Plaintiff also "seeks to dismiss his case without prejudice."  (Mot. to Remand at 9.)  In analyzing a motion for voluntary dismissal, the Court must "consider whether the defendant will suffer some plain legal prejudice as a result of the dismissal."  *Hamilton v. Firestone Tire & Rubber Co.*, 679 F.2d 143, 145 (9th Cir. 1982).  "The inconvenience of defending another lawsuit or the fact that the defendant has already begun trial preparations does not constitute prejudice."  *Hyde & Drath v. Baker*, 24 F.3d 1162, 1169 (9th Cir. 1994).

Here, the prejudice is much more than just another lawsuit or Defendants' trial preparations.  On January 21, 2015, Plaintiff filed a motion to compel discovery with the presiding Magistrate Judge.  (ECF No. 23.)  Two days later, the Magistrate Judge denied the motion on grounds that it was untimely and not in compliance with the Case Management Scheduling Order.  (ECF No. 24.)  If the Court allowed Plaintiff to

1    dismiss his case and refile, he would obtain a new set of discovery deadlines.  The
2    Court is not willing to allow Plaintiff another bite at the discovery apple.

3         Additionally, Plaintiff waived his right to a jury trial.   When the original
4    Complaint was filed in state court, Plaintiff's only annotation regarding a jury trial
5    demand was a checked "Yes" box on the civil cover sheet—the actual Complaint
6    served on Defendants makes no mention of a jury trial.   Ninth Circuit precedent is
7    clear that checking the jury demand box on a civil cover sheet is insufficient to meet
8    the requirements of Federal Rule of Civil Procedure 38(b).   *Wall v. Nat. R.R.*
9    *Passenger Corp.*, 718 F.2d 906, 909 (9th Cir. 1983).  Local Rule 38-2 sets forth the
10   procedures a non-removing party must follow to preserve his or her right to a jury trial
11   in federal court.  *See* L.R. 38-2 ("In all such cases removed to this Court which are not
12   at issue at the time of removal, the demand for jury trial must be filed within ten (10)
13   days after service of the last responsive pleading addressed to an issue triable by right
14   by a jury.").  Plaintiff failed to comply with both Local Rule 38-2 and Federal Rule of
15   Civil Procedure 38(b) when his only demand for a jury trial was a checked box on his
16   state civil cover sheet.

17        Additionally, Plaintiff is estopped from arguing that the checked box is enough
18   because he conceded in the Joint Rule 26(f) Report that no demand was ever made.
19   The Joint Report—emphasis on "Joint"—states:   "In the Parties' Rule 26(f)
20   Conference, counsel for Plaintiff indicated they *would* request a trial by jury[.]"  (ECF
21   No. 16 at 4 [added emphasis].)  This is an admission that Plaintiff's civil cover sheet
22   was *not* a demand for a jury trial, and the Plaintiff is now estopped from arguing
23   otherwise.  It is undisputed that Plaintiff never made any attempt to demand a jury
24   trial until now, a month before trial.

25        The Court concludes that the right to a jury trial was waived and Plaintiff
26   cannot resurrect that right through a voluntary dismissal.  Ninth Circuit authority is
27   clear that "a voluntary dismissal may not be used to revive a jury trial right that was
28   forfeited by the failure to make a timely jury demand."   *Koerner v. Aetna U.S.*

*Healthcare, Inc.*, 92 Fed. Appx. 394, 396 (9th Cir. 2003) (citing *Russ v. Standard Ins. Co.*, 120 F.3d 988, 990 (9th Cir. 1997)).   The Court will not allow Plaintiff to voluntarily dismiss this case because Defendants will suffer a plain legal prejudice if Plaintiff iss allowed to start the litigation over.   The plain legal prejudice in this case is another attempt to conduct timely discovery and the revival of the right to a jury trial. Plaintiff's alternative request for voluntary dismissal is denied.   Accordingly, Plaintiff's Motion to Remand is **DENIED**.  (ECF No. 26.)

**B.    Defendants' Motion for Summary Judgment**

Plaintiff's first cause of action is for a breach of contract, and each subsequent claim is dependent on the Court first determining whether Defendants breached the Employment Agreement.   The Court will therefore first address Plaintiff's breach of contract claim, and each of the three theories of breach.   The Court will then explain how the success and failure of the breach claim impacts the subsequent causes of action.

**1.    First Cause of Action: Breach of Contract**

In his Complaint, Plaintiff alleges that his Employment Agreement was breached three times.   The Court will discuss each alleged breach independently.

**a.    Medical Benefits**

The first alleged breach involves the employee benefits plan.  Plaintiff alleges that Defendants breached the Employment Agreement "by failing to pay Plaintiff's medical insurance while he was still employed," and by failing to "continu[e] . . . his group health plan for 24 months."  (Compl. ¶¶ 14, 16.)   As discussed *supra*, Plaintiff concedes all of his claims regarding a failure to obtain reimbursement under Defendants' welfare benefits plan.  Plaintiff concedes that Defendants never created an executive medical plan and Plaintiff used medical insurance obtained elsewhere. (*See* MSJ Opp. Br. at 2; PUF No. 13 ["Plaintiff has withdrawn his claims for medical benefits as he was never a participant in Defendants' plan."].)  As a result, any claim / / /

based on the failure to provide medical benefits or insurance—such as Plaintiff's first theory of breach of contract—is dismissed.

### b.  Bonus Disclosures and Annual Bonuses

The second alleged breach involves bonus pay and disclosures.  Plaintiff alleges that Defendants breached the Employment Agreement by "failing to pay to Plaintiff Andrews his yearly bonus . . . [and] by failing to provide to Plaintiff with documents outlining the bonus target for the Incentive Bonus Plan for years 2009–2013." (Compl. ¶ 15.)  The parties agree that Plaintiff was not paid a bonus during the period in question.

### i.  *Disclosures of Incentive Bonus Plan*

Defendants first argue that the Employment Agreement provides that Plaintiff is only entitled to "participate" in an incentive bonus program *if* the Board of Directors established such a program.  (MSJ at 10.)  Defendants claim that that the Board of Directors did not establish such a program, and therefore the condition precedent to Plaintiff receiving his bonus never occurred.  (*Id*. ["Here, it is undisputed that the Board of Directors did not establish an incentive bonus program for Plaintiff for the years at issue."].)  Plaintiff responds by pointing to language in the Employment Agreement which states that "the Board of Directors *shall* establish the Incentive Bonus Plan . . . and *shall* provide the Executive with the bonus target for the next fiscal year."  (MSJ Opp. Br. at 10 [added emphasis].)

The Court finds that there are no genuine disputed issues of material facts for this claim.  Plaintiff claims that his Employment Agreement was breached when Defendants failed to implement an initiative bonus plan.  The clear language of the Employment Agreement states that Defendants "shall" establish an initiative bonus plan.  Defendants unequivocally concede that they did not create an initiative bonus plan.  This is an undisputed breach of contract.  Defendants breached the Employment Agreement by failing to create and publish an annual incentive bonus plan.

/ / /

ii.     *Failure to Pay Bonuses*

Defendants also argue that the Employment Agreement provides another condition precedent to Plaintiff receiving any bonus—Plaintiff was only eligible for a bonus if Andrews International reached an annual financial target.  (MSJ at 10.)  The Employment Agreement states that the "Board of Directors of the Employer shall establish the Incentive Bonus Plan for the following fiscal year consistent with Exhibit B and shall provide the Executive with the bonus target for the next fiscal year." (Emp. Ag. at 1.)  Exhibit B to the Employment Agreement is titled "Bonus Plan for Fiscal Years Following Fiscal Year 2008."  (*Id.*, Ex. B.)  Exhibit B explains that the budgeted, pre-bonus EBITDA[2] for fiscal year 2008 is $20,831,841.00, and Plaintiff will not receive a bonus unless the company reaches 85 percent of that goal.  (*Id.*) Defendants argue that it is "undisputed that Andrews International failed to achieve its financial performance targets in each of the years at issue.  (MSJ at 10; DUF No. 10.)

Plaintiff's *only* response is that "Defendants['] assertions that Plaintiff was not eligible for a bonus are unsupported by the evidence."  (MSJ Opp. Br. at 5.)  Plaintiff also argues "U.S. Security has refused to provide their certified audited financial records for the years 2012 and 2013 pursuant to Plaintiff's discovery requests and has failed to keep accurate financial records."  (*Id.*)

The Court first notes that Plaintiff waives any argument regarding the applicability of Exhibit B's figures to fiscal years 2009 through 2013.  The Board of Directors were required to create a financial goal for each fiscal year and Exhibit B appears to only set targets based on fiscal year 2008's finances.  However, Plaintiff does not contend that Exhibit B *does not* apply to the years in question, so the Court is content with applying Exhibit B to all years in question.  Thus relying solely on the figures in Exhibit B, the arguments of the parties focus on the burden of proof.  Both / / /

---

[2] The Court takes judicial notice that "EBITDA" is understood in the business community to mean "earnings before interest, taxes, depreciation, and amortization."

1    sides claim that the other cannot prove the fact in question—whether Andrews
2    International reached the 85 percent financial threshold.

3         "When the non-moving party has the burden at trial . . . the moving party need
4    not produce evidence negating or disproving every essential element of the non-
5    moving party's case.  Instead, the moving party's burden is met by pointing out there
6    is an absence of evidence supporting the non-moving party's case."  *Stanley v.*
7    *Novartis Pharms. Corp.*, 11 F. Supp. 3d 987, 994 (C.D. Cal. 2014) (citing *Celotex*,
8    477 U.S. at 325).  Defendants satisfied this initial burden by arguing that Plaintiff does
9    not have enough evidence to prove his claim.  (DUF No. 27.)

10        The burden then shifts to Plaintiff who must show that there is a genuine
11   dispute of material fact.  *See Nissan Fire & Marine*, 210 F.3d at 1102.  "The non-
12   moving party must make an affirmative showing on all matters placed in issue by the
13   motion as to which it has the burden of proof at trial."  *Stanley*, 11 F. Supp. 3d at 994.
14   Plaintiff bears the burden at trial of proving that he is entitled to a bonus.  In doing so,
15   he must prove that all condition precedents were satisfied.  The 85 percent goal in
16   Exhibit B is a clear condition precedent to Plaintiff receiving any bonus.  Under
17   California law, a "contract is unenforceable if a condition precedent is not met."
18   *Willard v. Valley Forge Life Ins. Co.*, 218 F. Supp. 2d 1197, 1201 (C.D. Cal. 2002)
19   (citing *Platt Pac. v. Andelson*, 862 P.2d 158 (Cal. 1993)).  "Only when an employee
20   satisfies the condition(s) precedent to receiving incentive compensation . . . can that
21   employee be said to have earned the incentive compensation (thereby necessitating
22   payment upon resignation or termination)."  *Schachter v. Citigroup, Inc.*, 218 P.3d
23   262, 270 (Cal. 2009).  Plaintiff's *only* showing to support his claim is an argument
24   that Defendants cannot support their claim with evidence.  Plaintiff cannot carry his
25   burden in this manner—he must produce evidence to support his claim.  Plaintiff
26   carries the burden of proving Andrews International met the 85 percent target, and he
27   failed to produce *any* evidence that the condition precedent was satisfied.
28   / / /

The Court rejects Plaintiff's reliance on U.S. Security's revenue.  Plaintiff argues that "Defendant, U.S. Security as a whole made $70,000,000.00 in 2012 and $80,000,000.00 in 2013 and Schneider received a bonus in both 2012 and 2013." (PUF No. 19.)  U.S. Security's revenue is irrelevant in the determination as to whether *Andrews International* reached the 85 percent financial goal.  The 2008 Employment Agreement—which creates the bonus incentive plan—was made "by and between Andrews International, Inc. . . . and Roger Andrews."  (Emp. Ag. at 1.)  There is no evidence that Plaintiff's bonus was tied to the earnings of Andrews International's parent company.

Plaintiff's argument that Defendants failed to comply with discovery requests is meritless.  There is a formal process for resolving discovery disputes in this Court, *see* L.R. 37-2, and a responsive brief to a motion for summary judgment is not one of the options.  Plaintiff cannot raise an untimely discovery dispute as a defense to summary judgment.  Defendants argue that there is no evidence that the financial targets were met, and therefore the burden shifts to Plaintiff to produce some evidence.  *See Nissan Fire & Marine Ins.*, 210 F.3d at 1102.  Plaintiff then failed to meet his burden.  As a result, there is no genuine disputed issue as to a material fact regarding the financial goals condition precedent.

### iii.  *Resolution*

There are no disputed facts with respect to the bonus pay and disclosures, and the Court can therefore issue a ruling in favor of Defendants *and* Plaintiff.   First, the financial target condition precedent precludes Plaintiff from recovering any bonus payment.  There are no disputed facts surrounding the condition precedent or Andrew International's failure to reach the 85 percent target.  Summary judgment in favor of Defendants is appropriate on this issue.

Second, there is no disputed fact regarding Defendants' breach when the Board of Directors failed to establish annual bonus incentive plans.  Defendants concede this breach.   Plaintiff's failure to prove that he was entitled to a bonus under the

Employment Agreement does *not* negate Defendants' admitted breach by failing to produce an annual bonus incentive plan.  Defendants' breach is independent of the financial target condition precedent.  Whether Plaintiff was damaged by this breach is not before the Court.

"Even where there has been no cross-motion for summary judgment, a district court may enter summary judgment against a moving party if that party has had a 'full and fair opportunity to ventilate the issues involved in the matter.'"  *Alfa Leisure, Inc. v. King of the Road*, 314 F. Supp. 2d 1010, 1013 (C.D. Cal. 2004) (quoting *Gospel Missions of Am. v. Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003)); *see also* Fed. R. Civ. Pro. 56(f) ("After giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant.").  The Court finds that summary judgment in favor of Plaintiff on the bonus incentive plan breach is appropriate.  Not only did Defendants have a "full and fair opportunity to ventilate the issue," but they conceded the issue.  Without disputed facts, there is no need for a fact-finder on this issue.  Partial summary judgment in favor of Plaintiff is therefore appropriate under Rule 56(f).

### c.    Severance Pay

The third alleged breach involves severance pay.  Plaintiff alleges that Defendants breached the employment agreement "by failing to pay Plaintiff Andrews certain termination benefits including continuation of his salary for 24 months . . . and a pro rata portion of his bonus."  (Compl. ¶ 16.)  In their Motion for Summary Judgment, Defendants argue that Plaintiff was never terminated without cause and is thus not entitled to any severance pay or severance benefits.  (MSJ at 11.)  Defendants argue that Plaintiff's employment naturally expired on the date established in the Employment Agreement and in accordance with the agreed upon expiration terms.  (*Id.* at 11–12.)

Plaintiff makes three arguments in response.  First, he argues that that he was "terminated without cause when Defendants did not offer him a new employment

agreement." (MSJ Opp. Br. at 12.)  Plaintiff's deposition testimony on this subject is helpful in understanding the logic behind his argument:

> "Q.    And you replied that you understood that you were not terminated with – or that you were terminated without cause; is that right?
>
> A.    Yes
>
> Q.    And what, in your mind, does it mean to be terminated without case?
>
> A.    Departing the company at no fault of my own.
>
> Q.    Okay.  And would the expiration of your contract be something that was no fault of your own?
>
> A.    No.
>
> Q.    Okay.  And so how did you come to the understanding that you were terminated without cause?
>
> A.    John Harford told me in our meeting that they were not going to renew my contract.
>
> Q.    Did he tell you that you were being terminated without cause?
>
> A.    That was termination.
>
> Q.    Did he tell you - -
>
> A.    That is termination in my mind - -
>
> Q.    Okay. Did - -
>
> A.    - - terminated employment.
>
> Q.    Did he tell you you're being terminated without cause?
>
> A.    No.
>
> Q.    Did anyone at the company ever tell you you're being terminated without cause?
>
> A.    No."

(Pl.'s Dep. 239:11–240:15.)

Not only did no one tell Plaintiff he was terminated without cause, but the terms of the Employment Agreement contradict his argument.    Plaintiff's Employment

Agreement states that it expires on October 3, 2013, and there is no language anywhere to suggest that the natural expiration of the Employment Agreement is a "termination without cause."   The Employment Agreement states that "all compensation and benefits payable to the Executive under this Agreement shall terminate on the date of termination of the Executive's employment under this Agreement."  (Emp. Ag. ¶ 6(d).)  The Employment Agreement then explains that severance benefits are *only* available if Plaintiff is terminated without cause.  (*Id.* ¶ 6(d)(i).)   Plaintiff's conclusion that the natural expiration of the Employment Agreement constitutes termination "without cause" is unsupported by any evidence.

Plaintiff's second argument is that U.S. Security CEO Charles Schneider orally amended the terms of his Employment Agreement during the 2012 negotiations with Randy Andrews.  (MSJ Opp. Br. at 3.)  Plaintiff points to the following question and answer from Randy Andrews' deposition:  "Q.  Okay.  And [Charles Schneider] also understood that at the end of [Plaintiff's] contract, that if they did not offer additional employment to him or a new contract, that he would be entitled to two years severance; is that correct? [¶] A.  Yes."  (Randy Andrews Dep. 20:14–19.)  According to Plaintiff, Charles Schneider orally amended the Employment Agreement to include automatic severance pay if Plaintiff's contract naturally expired.

The Court rejects this argument for several reasons.  First, the Employment Agreement contains a written amendment clause that prohibits the *exact* type of oral amendment Plaintiff now seeks.  California law "allows oral modification of a written contract only if the written contract does not provide otherwise."  *Fanucchi & Limi Farms v. United Agri Prods.*, 414 F.3d 1075, 1081 (9th Cir. 2005) (citing Cal. Civ. Code § 1968(b)).  *See also Marani v. Jackson*, 228 Cal. Rptr. 518, 523 (Cal. Ct. App. 1986) (noting that oral modification of a written contract is allowed only if "the written contract does not contain an express provision requiring that modification be in writing").  Here, the parties agreed to make all amendments to the Employment Agreement in writing—the four corners of the Employment Agreement do not

authorize oral modifications.  Plaintiff offers no written evidence of his proposed oral modification.  The Employment Agreement contains an integration clause and a no-oral-modification clause, and therefore Plaintiff's assertion of an oral modification is rejected.

Second, the statement by Randy Andrews is not admissible.  At the deposition, opposing counsel objected on grounds that Randy Andrews' response calls for speculation, lacks foundation, and assumes facts not in evidence.  (Randy Andrews Dep. 20:22–23.)   The objections are well founded.   Not only is Randy Andrews merely speculating as to what Charles Schneider understood, but his statement assumes facts not in evidence—he never actually testified that he negotiated two years of automatic severance pay for Plaintiff.  Randy Andrews' speculative answer is the only testimony offered regarding Plaintiff's severance and it is the cornerstone of Plaintiff's entire argument—he cites the response four times in his Statement of Disputed Facts.  (*See* PUF Nos. 8, 9, 12, 13.)   The Court may only consider admissible evidence in ruling on a motion for summary judgment.  *See* Fed. R. Civ. P. 56(c)(2); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988) ("It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.").   The Court finds that Randy Andrews' speculative response to a leading question is not sufficient to create a genuine issue of material fact.

Plaintiff further argues that the Offer of Employment is written proof that Charles Schneider orally amended the Employment Agreement because the Offer of Employment contains additional consideration—a new non-compete provision. Plaintiff argues that the "2008 Agreement did not contain a non-compete provision, only a non-solicitation provision . . . [and] [t]his new consideration further supports [P]laintiff's entitlement to his 24-months severance." (MSJ Opp. Br. at 4.)  The Court rejects this argument on grounds that there is still no written proof that parties agreed to two-years of automatic severance pay.   Even assuming that the Offer of

20

Employment contains a new non-compete provision—which is itself dubious—that provision does nothing to prove Plaintiff's claim to automatic severance pay. Plaintiff's claim that a new non-compete provision proves an oral severance pay agreement is based on no actual evidence or logic.

Plaintiff's final claim to severance pay is that the 2012 Offer of Employment "simply states that Plaintiff is entitled to 24 months severance." (MSJ Opp. Br. at 12.) The Offer of Employment is a two page document. The first page has two columns; one column notes the "current terms" in the Employment Agreement, and the other notes the "proposed terms" that constitute the Offer of Employment. The terms in both columns are identical, supporting the undisputed fact that the 2012 Offer of Employment ratified the entire 2008 Employment Agreement as is. The second page of the Offer of Employment states: "Starting 'on the closing date' the Company will honor your *existing* Andrews International Employment agreement ending October 3, 2013." (*See* Off. Emp. [emphasis added].) Plaintiff, however, wants to add *new* terms to the Offer of Employment. Plaintiff is correct that the Offer of Employment simply states "24 months" next to the title "Severance." However, Plaintiff is not correct that absence of other qualifying language means that he is automatically entitled to the twenty-four months of severance pay. All of the conditions and qualifications from the Employment Agreement are still in force, and this includes the terms requiring termination without cause to rate severance pay. The mere listing of "24 month" next to "Severance" does not create the automatic entitlement to severance pay and does not trump the terms from the Employment Agreement.

This theory is also illogical on grounds that "24 months" is also the simple notation explaining the terms under the Employment Agreement. Plaintiff does not contend that he was automatically entitled to severance pay under the terms of the Employment Agreement, and therefore his emphasis on the simply stated nature of the terms in the Offer of Employment column would create inconsistent results. / / /

1   As a result, Defendants are entitled to summary judgment on Plaintiff's severance pay
2   claim.

### d.   Plaintiff's Breach of the Employment Agreement

4       Finally, Defendants argue that all breach of contract claims are barred on
5   grounds that Plaintiff breached the Employment Agreement.   They assert that the
6   Employment Agreement required Plaintiff to return all confidential records when his
7   employment terminated and Plaintiff breached that provision when he kept "reams" of
8   sensitive information after October 3, 2013.  (MSJ at 14.)  Defendants contend that the
9   Employment Agreement prohibits Plaintiff from retaining any confidential
10  information after termination, and by keeping such information Plaintiff committed a
11  material breach that relieves Defendants of their duty to perform.  (*Id.*)   The Court
12  rejects this arguments on grounds that each breach of contract committed by
13  Defendants—the failure to create an annual bonus incentive plan—occurred prior to
14  Plaintiff's alleged breach.  Thus, Plaintiff's alleged breach did not relieve Defendants
15  of anything because their breach was already complete.  This argument is rejected.

### 2.   Second Cause of Action:  Failure to Pay Wages

17      Plaintiff's second cause of action is entirely derivative of his breach of contract
18  claim.   Plaintiff alleges that Defendants violated California Labor Code §§ 200, 201,
19  and 202 by failing to pay Plaintiff bonuses and severance pay as promised in the
20  Employment Agreement.  (Compl. ¶ 21.)  Because the Court finds that Plaintiff was
21  not entitled to any bonuses or severance pay, Defendants committed no failure to pay
22  under California law.  *See Schachter*, 218 P.3d at 271.  Defendants' failure to create
23  an annual incentive bonus plan is unrelated to any payment of wages.  Accordingly,
24  Defendants are entitled to summary judgment for the second cause of action.

### 3.   Third Cause of Action:  Failure to Pay Wages Upon Termination

26      Once again, this cause of action is a derivative of Plaintiff's breach of contract
27  claim.  Because Plaintiff cannot establish that he was due any bonus compensation or
28  / / /

1    severance at the time of his separation, this claim fails as a matter of law.  Defendants

2    are entitled to summary judgment on the third cause of action.

3         **4.       Fourth Cause of Action:  Negligent Misrepresentation**

4              Plaintiff's fourth cause of action is for negligent misrepresentation and is

5    premised on Defendants' alleged representations that he would be paid medical

6    benefits, annual bonuses, and severance claims.   (Compl. ¶ 40, 42, 44.)   The

7    Complaint states:  "Defendants and each of them, represented to Plaintiff Andrews

8    that while employed, he *would* be entitled to a yearly bonus up to 38.8% of his salary,

9    known as the Incentive Bonus Plan . . . ."   (*Id.* ¶ 42 [emphasis added].)   The

10   Complaint also states:  "Defendant and each of them, represented to Plaintiff Andrews

11   that they *would* pay Plaintiff upon termination, certain termination benefits including a

12   severance comprising continuation of his salary for 24 months . . . ."  (*Id.* ¶ 44

13   [emphasis added].)    Both of these statements from the Complaint indicate that

14   Plaintiff allegedly relied on what "would" happen in the future.

15             "Although a false promise to perform in the future can support an *intentional*

16   misrepresentation claim, it does not support a claim for *negligent* misrepresentation."

17   *Stockton Mortgage, Inc. v. Tope*, 183 Cal. Rptr. 3d 186, 204 (Cal. Ct. App. 2014)

18   (original emphasis).  In *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. Rptr. 2d

19   861, 863 (Cal. Ct. App. 1991), the court held that a misrepresentation that the insurer

20   "would pay for [the plaintiff's] repairs immediately upon their completion" was not an

21   actionable claim of negligent misrepresentation because it was a promise for a future

22   performance.   *Tarmann* explains that the "critical alleged misrepresentation as to

23   immediate payment upon completion did not involve a past or existing material fact.

24   Rather, it involved a promise to perform at some future time." *Id.*

25             Here, the alleged misrepresentations are promises for future performances.  All

26   of the alleged misrepresentations identified by Plaintiff are representations involving

27   what he "would be paid" in the future.  These future representations do not support a

28   / / /

1    claim for negligent misrepresentation, and therefore Defendants are entitled to

2    summary judgment on this cause of action.

3         **5.       Fifth Cause of Action:  Failure to Keep Accurate Records**

4         Plaintiff's fifth cause of action seeks civil penalties for a violation of

5    "California Industrial Welfare Commission Wage Order 9-2001, Section 7."  (Compl.

6    ¶ 50.)  This Wage Order, which is codified under California Code of Regulations, title

7    8, section 11090, is titled "Order Regulating Wages, Hours, and Working Condition in

8    the Transportation Industry."   This Wage Order states that is "shall apply to all

9    persons employed in the transportation industry."  Cal. Code Regs. tit 8, § 11090(1).

10   In their Motion for Summary Judgment, Defendants note that Plaintiff is not

11   employed in the transportation industry.  Plaintiff fails to respond to this argument—

12   and the other fatal flaws in this claim—and based on its independent review of Wage

13   Order 9-2001, the Court sees no basis for this claim.   Defendants are entitled to

14   summary judgment on the fifth cause of action.

15        **6.       Sixth Cause of Action:  UCL**

16        Plaintiff's "unlawful" UCL claim is based on "Defendants' violations of the

17   California Labor Code and Wage Order provisions, and failure to keep accurate

18   records." (Compl. ¶ 58.)  These alleged violations "constitute 'unlawful business acts

19   or practices' under Sections 17200 et seq." (*Id.*)  Because the Court grants Defendants

20   summary judgment on all of these alleged "unlawful" acts, there are no underlying

21   violations to support a UCL cause of action.  *See Budrow v. Dave & Buster's of Cal.,*

22   *Inc.*, 90 Cal. Rptr. 3d 239, 246 (Cal. Ct. App. 2009) (holding that a UCL unlawful

23   claim fails as a matter of law if no underlying unlawful conduct).

24        Plaintiff's "unfair" UCL claim is alleged as follows:  "The acts and practices of

25   Defendants and each of them, in . . . failing to pay Plaintiff his severance, continued

26   health care benefits and bonus monies owed to him, is 'unfair' as Defendants . . . have

27   fully compensated other terminated employee/executives."  (Compl. ¶ 59.)  A breach

28   of contract may form the predicate for UCL claims, provided it also constitutes

24

1  conduct that is unfair.  *Puentes v. Wells Fargo Home Mortgage, Inc.*, 72 Cal. Rptr. 3d
2  903, 909 (Cal. Ct. App. 2008).  The alleged conduct in this case is not unfair because
3  Defendants were not required to pay Plaintiff bonuses or severance under the terms of
4  the Employment Agreement.  Defendants are entitled to summary judgment as to
5  every claim except a breach of contract based on the failure to publish an annual
6  bonus incentive plan.  Defendants' failure to publish an incentive bonus plan is not
7  part of Plaintiff's "unfair" UCL claim.  Therefore, Defendants are entitled to summary
8  judgment on each UCL claim.

9       **7.**      **Seventh Cause of Action:  Accounting and Constructive Trust**

10       Plaintiff's claim for an accounting and constructive trust are exclusively based
11  on his failure to receive bonuses and severance pay.  (Compl. ¶ 63–74.)  Because the
12  Court finds that Plaintiff is entitled to neither bonus pay nor severance pay, this claim
13  is therefore moot.  Summary judgment in favor of Defendants is appropriate for this
14  claim.

15  / / /
16  / / /
17  / / /
18  / / /
19  / / /
20  / / /
21  / / /
22  / / /
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

## VI.    CONCLUSION

As discussed above, the Court hereby **DENIES** Plaintiff's Motion to Remand. (ECF No. 26.)  Plaintiff cannot skirt this Court's jurisdiction by requesting remand on the eve of trial.  The Court also hereby **GRANTS IN PART** Defendants' Motion for Summary Judgment. (ECF No. 25.)  Defendants are granted summary judgment on all causes of action *except* Plaintiff's breach of contract claim predicated on Defendants' failure to publish an annual bonus incentive plan.  Finally, and pursuant to Federal Rule of Civil Procedure 56(f), the Court hereby **GRANTS** Plaintiff partial summary judgment.  Defendants concede that they breached the Employment Agreement by not creating an annual bonus incentive plan.  As a result of this concession, there is no triable issue of fact to send to the fact-finder and a Rule 56(f) partial summary judgment in favor of Plaintiff is appropriate.  All liability is therefore conclusively assigned.  The only matter remaining for trial is damages.

**IT IS SO ORDERED.**

March 17, 2015

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**